IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JOHN DOE,                            )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )          No. CIV-05-1287-C
                                     )
BRUNDAGE-BONE CONCRETE               )
PUMPING, INC., a foreign corporation,)
                                     )
                    Defendant.       )

## REDACTED MEMORANDUM OPINION & ORDER

In this case Plaintiff asserts a number of federal and state law claims based on his

employer allegedly having obtained hospital billing records that disclosed sensitive medical

treatment. Both sides seek summary judgment on some or all claims. Those motions are at

issue. For the reasons explained below, the Court holds that Defendant is entitled to

summary judgment on all of Plaintiff's claims.

## BACKGROUND

Defendant is in the construction industry and involved in large scale commercial

concrete pumping. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████ Plaintiff received medical treatment for the injuries he suffered, filed a workers' compensation claim, obtained legal counsel, and was on total temporary disability for several months.

In March 2004, while Plaintiff was on total temporary disability, Defendant's Oklahoma City manager, Gary Van Nest, received a health insurance claim form from ██████████████████████ (the Hospital). The form related to a visit by Plaintiff on December 12, 2003. It further identified Defendant as Plaintiff's employer and the claim as one for workers' compensation. As indicated above, Plaintiff was not an employee of Defendant in December 2003. According to Van Nest, he called the Hospital to inquire about the claim and was told to bring the form to the Hospital. On March 31, Van Nest went to the hospital and was given several pages of billing records. Six separate pages are in the record. Two pages clearly include references to treatment for a back injury. Another page includes a single entry for a "CT CHEST W/O STAT" performed on November 11, 2003. Van Nest took these records back to the Oklahoma City office. Another employee saw these records laying on a desk in that office.

Apparently, the Hospital billing clerk believed that she had given the records to Plaintiff. However, the ██████████████ officer who investigated the incident in April 2004 determined that no law had been broken based on statements from Van Nest and the clerk that Van Nest had not claimed to be Plaintiff when he obtained the records. In a state court suit by Plaintiff, the Hospital claimed that Van Nest had identified himself as Plaintiff

2

and requested copies of billing records.  But the Hospital has since amended its answer to

state that a person "presented to" the Hospital and requested copies of billing records and that

the Hospital believed that person was authorized to obtain the records and provided the

necessary personal information to gain access to billing records.

Van Nest did not have a medical release from Plaintiff.  However, as part of

Plaintiff's admission for treatment in December 2003, he signed a form containing the

following release:

> I HEREBY AUTHORIZE THE HOSPITAL TO DISCLOSE TO
> INSURANCE COMPANIES, INCLUDING WORKERS COMPENSATION
> CARRIERS, OR OTHER PARTIES THAT MAY BE LIABLE FOR ALL OR
> PART OF THE HOSPITAL CHARGES, ALL OR PART OF MY HOSPITAL
> RECORDS AS MAY BE NECESSARY (INCLUDING ANY TREATMENT
> FOR ALCOHOL OR DRUG ABUSE OR DEPENDENCE), TO
> DETERMINE BENEFITS ENTITLEMENT AND PROCESS PAYMENT
> CLAIMS FOR HEALTH CARE SERVICES PROVIDED.

(Def.'s Resp. Ex. 1.)

In August and September 2004, Plaintiff called and had several discussions with

various Defendant employees, including Van Nest and Defendant's Director of Safety,

Health and Environmental (Dennis Rask), about returning to work.  On September 9,

Plaintiff faxed his release to return to work to Defendant.  Plaintiff was not offered another

job, although ████████████████████████████████████████████████

were available.  In the past, Plaintiff had operated ████████████████████████

████████████████████████████████████████████████ (Pl.'s Resp.

Ex. A at 19.)  In addition, Plaintiff had been operating a ████████████ when he was

injured in ████████. According to Van Nest, he did not offer Plaintiff either of the available positions because Plaintiff had previously indicated that he did not like the physically demanding work ██████████ and operating a ██████████ made him nervous. (Def.'s Mot. Ex. 3 ¶¶ 2-6.) Defendant's job description for operators of its various ████████ is the same.

Plaintiff is HIV+ and contends that the billing records Van Nest obtained from the Hospital disclosed HIV treatment. Van Nest and other employees of Defendant claim that they did not know that Plaintiff was HIV+ until this lawsuit was filed.

### STANDARD

Summary judgment is proper only if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Id. When deciding whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Simms v. Oklahoma ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999). At the summary judgment stage, the Court's function is not to weigh the evidence but to determine whether there is a

genuine issue for trial.  Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994).

When the nonmovant will bear the burden of proof at trial, summary judgment is avoided

only by going beyond the pleadings and presenting evidence sufficient to establish the

existence, as a triable issue, of an essential and contested element of the case.  Perry v.

Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999).

With respect to cross-motions for summary judgment, the Court must evaluate each

motion on its own merits, construing all inferences in favor of the party against whom the

motion under consideration is made.  See Pirkheim v. First Unum Life Ins., 229 F.3d 1008,

1010 (10th Cir. 2000).  Although summary judgment is inappropriate if disputes remain as

to material facts, the Court is permitted "to assume that no evidence needs to be considered

other than that filed by the parties."  Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226

F.3d 1138, 1148 (10th Cir. 2000) (citations omitted).

## DISCUSSION

Plaintiff has asserted claims for:  (1) termination or failure to re-hire in violation of

the Americans with Disabilities Act (ADA); (2) invasion of privacy; (3) intentional infliction

of emotional distress; (4) negligence; (5) violation of 63 Okla. Stat. § 1-502.2 for failing to

keep records that identify someone who may have a communicable disease confidential;

(6) violation of the Family Medical Leave Act (FMLA); and (7) retaliatory discharge in

violation of 85 Okla. Stat. §§ 5 and 6. Plaintiff has moved for summary judgment on his

invasion of privacy and retaliatory discharge claims.  Defendant has moved for summary

judgment on all claims.  The claims and the parties' arguments are considered below.

1.    ADA

Plaintiff alleges that Defendant's termination of him and/or failure to re-hire him

following his on-the-job injury in ▮▮▮▮▮▮▮ was due to his disability or Defendant's

perception of him as having a disability, in violation of the ADA.[1]

> "The ADA prohibits discrimination by covered entities, including
> private employers, against qualified individuals with a disability." Sutton v.
> United Air Lines, Inc., 527 U.S. 471, 477 (1999).  Under the ADA, a person
> with a disability is defined, among other things, as an individual who is
> "regarded as having . . . an impairment" which "substantially limits one or
> more of the major life activities of such individual." 42 U.S.C. § 12102(2).
> "[T]o establish a disability under the 'regarded as' prong of the ADA with
> respect to the major life activity of working, an individual must show [his]
> employer regarded him . . . as being substantially limited in performing either
> a class of jobs or a broad range of jobs in various classes." Steele v. Thiokol
> Corp., 241 F.3d 1248, 1256 (10th Cir. 2001) (quotation omitted).  The
> employee also must show his employer's misperceptions were based on myths,
> fears, or stereotypes associated with disabilities.  Doebele v. Sprint/United
> Mgmt. Co., 342 F.3d 1117, 1133 (10th Cir. 2003).

Levelle v. Penske Logistics, No. 05-1216, 2006 WL 2328741, at *5 (10th Cir. Aug. 11, 2006)

(footnote omitted).[2]

---

[1]  Plaintiff does not specifically identify the disability or perceived disability in those
paragraphs of his Complaint as related to his HIV+ status.  However, in his Response, Plaintiff
refers to a disability "discovered by the Defendant in its improper obtainment of Plaintiff's
protected health information." (Pl.'s Resp. at 15.)  And elsewhere in the Complaint, Plaintiff
refers to HIV as a disability.

[2]  All citations to Tenth Circuit unpublished decisions are in accordance with Tenth
Circuit Rule 36.3(B).

The Court finds that there is no genuine issue for trial as to whether Plaintiff was

disabled or regarded as having a disability, based on his HIV+ status, because there is no

evidence that anyone within Defendant's organization knew he was HIV+.  Defendant has

offered evidence that Van Nest and others did not learn of Plaintiff's HIV+ status until after

this lawsuit was filed.  The billing records produced do not identify Plaintiff as HIV+.  And

Plaintiff has not explained, nor does the Court appreciate, how the reference to a "CT chest

w/o stat" and knowledge of Plaintiff's pneumonia ████ could reasonably suggest that

Plaintiff is HIV+.  Because Plaintiff failed to set forth specific facts challenging Defendant's

evidence, Defendant is entitled to summary judgment on Plaintiff's ADA claim.

2.     Invasion of Privacy

Plaintiff also alleges that Defendant invaded his privacy.  Oklahoma has adopted the

Restatement of Torts (Second) § 652A, which identifies four distinct categories of invasion

of privacy.  McCormack v. Oklahoma Publ'g Co., 1980 OK 98, 613 P.2d 737, 740.  The

Complaint identifies two of those categories as applicable here:  intrusion upon the seclusion

of another and unreasonable publicity given to the other's private life.[3]

Plaintiff does not respond to arguments raised by Defendant as to why an invasion of

privacy claim based on unreasonable publicity should fail, and the Court agrees that there is

---

[3] Defendant complains that an intrusion upon seclusion claim was not asserted in the Complaint.  (Def.'s Resp. at 10-11.)  Although Plaintiff's invasion of privacy claim could have been drafted more clearly, the Court finds his reference to an invasion into his solitude or seclusion by obtaining health information reflecting his HIV+ status (Compl. ¶ 42) is sufficient to have put Defendant on notice that the privacy claim was not strictly based on a publicity theory.

no evidence that whatever Van Nest learned from the billing records was shared with a sufficiently large enough group to have been "published." An invasion of privacy by publication of private facts requires (1) publicity (2) which is unreasonable and (3) which is given as a private fact. <u>Eddy v. Brown</u>, 1986 OK 3, ¶ 11, 715 P.2d 74, 77. Disclosure to a limited number of coworkers is not a "publication." <u>Id.</u> 1986 OK 3, ¶ 12, 715 P.2d at 78. Therefore, summary judgment on the unreasonable publicity claim is granted in Defendant's favor.

However, Plaintiff claims that he is entitled to summary judgment on the invasion of privacy claim based on intrusion upon seclusion because Defendant obtained personal medical information without justification, privilege, or excuse. In contrast, Defendant argues summary judgment should be granted in its favor because Plaintiff consented to the release of medical records to parties that might be liable for payment and that its inquiry was limited and pursuant to a legitimate concern in determining its liability.

An intrusion upon seclusion requires:  (1) a nonconsensual intrusion (2) which was highly offensive to a reasonable person. <u>Gilmore v. Enogex, Inc.</u>, 1994 OK 76, ¶ 16, 878 P.2d 360, 366. The Court holds that summary judgment should be awarded in Defendant's favor because, as a matter of law, the intrusion was not highly offensive.[4] Because this claim

---

[4] The Court declines Defendant's invitation to base summary judgment on an alternate ground that the intrusion was consensual. The release the Hospital obtained from Plaintiff during his admission for treatment in December 2003 pertains to the Hospital's liability for releasing records. It is relevant, however, to show that Plaintiff consented to Defendant, as a party "that may be liable for all or part of the hospital charges . . . to determine benefits entitlement and process payment claims for health care services provided." Although Defendant was identified

is the subject of cross-motions for summary judgment, the Court may assume that there is no additional evidence relevant to the issue. On this record, the evidence shows that Van Nest appeared at the Hospital with the health insurance claim form relating to Plaintiff's December 2003 visit and identifying Defendant as a responsible party. The Hospital billing clerk apparently assumed that Van Nest was Plaintiff, despite the name "Gary" (which is not Plaintiff's name) featured on his work shirt. There is no evidence, however, that Van Nest affirmatively misrepresented his identity. Although there is an issue of fact as to why Van Nest wanted those records and what he hoped to learn, even viewed in the light most favorable to Plaintiff, this evidence is not enough to support a finding that Defendant's (agent's) conduct was highly offensive to a reasonable person.[5]

In Setzer v. Farmers Insurance Company, Inc., No. 04-5100, 2006 WL 1720186 (10th Cir. June 23, 2006), the Tenth Circuit affirmed summary judgment for the defendant Farmers

---

on the hospital insurance form as liable, there is evidence that Van Nest was seeking other information and knew based on the date disclosed in the form that Plaintiff was not an employee at the time. Plaintiff also claims that he relied on his own insurance and did not identify Defendant as a responsible party. Thus, there is a question of fact as to whether Van Nest was acting beyond the scope of the limited consent and in violation of Plaintiff's reasonable expectation of privacy.

[5] Plaintiff places considerable emphasis on Van Nest's alleged improper motives in wanting Plaintiff's records, but neither party has briefed the issue of what role motive plays in an intrusion upon seclusion analysis. Compare Ali v. Douglas Cable Commc'ns, 929 F. Supp. 1362, 1382 (D. Kan. 1996) (explaining Kansas precedent that liability for intrusion upon seclusion turns on the intruder's actions and not motives) with Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc., 306 F.3d 806, 819 (9th Cir. 2002) (explaining that whether an intrusion is highly offensive turns on "'the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded'") (citation omitted).

on an invasion of privacy/intrusion of seclusion claim because the conduct was not highly offensive. Setzer had sued a Farmer's insured based on a 1998 car accident in which Setzer suffered injuries to her lower back, legs, and feet. Farmers sought a general and unlimited authorization to secure any and all prior medical records, but Setzer provided only limited authorization, covering records from December 1999 forward and relating to her lower back, legs, and feet. Farmers apparently attached the limited authorization to a form letter explaining that its request covered all medical records and secured gynecological records that disclosed private matters (of which even Setzer's husband was unaware). In affirming the grant of summary judgment for Farmers, the court's discussion suggests that even if Farmers' conduct was intentional and for purposes of intimidation, the invasion of privacy claim failed because that conduct could not have been found highly offensive to a reasonable person. See Setzer, 2006 WL 1720186, at *6-7.

The conduct complained of in this suit is no more offensive than what allegedly occurred in Setzer. Thus, summary judgment is granted on this claim in Defendant's favor.

3.     Intentional Infliction of Emotional Distress

Plaintiff's intentional infliction of emotional distress claim is based on the alleged "fraudulent and deceitful" manner in which Defendant obtained information about Plaintiff's HIV+ status and the disclosure of that information to coworkers. (Compl. ¶¶ 47-51.)

Oklahoma, in accord with the Restatement of Torts (Second) § 46, recognizes intentional infliction of emotional distress as an independent tort. Eddy, 1986 OK 3, ¶ 5, 715

P.2d at 76. A prima facie case requires: (1) intentional or reckless conduct; (2) that was extreme and outrageous in the setting in which it occurred; and (3) that actually caused the plaintiff severe emotional distress. Id.; Breeden v. League Servs. Corp., 1978 OK 27, 575 P.2d 1374, 1376-78. It is the trial court's responsibility to determine whether the conduct may be reasonably regarded as extreme and outrageous in the sense of being so offensive "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.

In this instance, Plaintiff's claim fails the threshold inquiry because the conduct complained of was not extreme and outrageous. First, there is no evidence, as explained above, that the manner in which Van Nest obtained billing records related to Plaintiff's medical care was "beyond all possible bounds of decency" or would lead an average member of the community to exclaim "Outrageous!" See Restatement of Torts (Second) § 46. There is sufficient evidence for the jury to find that Van Nest failed to properly identify himself, but not that he affirmatively misrepresented himself.

Second, assuming that Van Nest intentionally or recklessly relayed the information he gleaned from the billing records to Plaintiff's co-workers or others within Defendant, that too was not extreme and outrageous under the circumstances. Plaintiff has failed to explain how that information identified him as HIV+, and there is no evidence refuting statements by those who allegedly were told that Plaintiff was HIV+ that they in fact did *not* know that. That Van Nest shared information that he might have reasonably taken from those records,

11

i.e., regarding Plaintiff's prior ██████ injury, with others in the company also is not extreme and outrageous. Defendant had received a bill identifying it as liable for fees associated with treatment for that injury, and Van Nest believed that discovery of this injury revealed a falsehood on Plaintiff's employment application. Thus, summary judgment is granted in Defendant's favor on the intentional infliction of emotional distress claim.

4.      Negligence

Plaintiff further claims that Defendant was negligent in permitting Van Nest to obtain the billing records reflecting Plaintiff's HIV+ status without Plaintiff's written consent and in failing to prevent the subsequent disclosure of Plaintiff's HIV+ status. (Compl. ¶¶ 52.) He claims that as a result, he was terminated, stigmatized, the subject of gossip and inquiry, his health deteriorated, and he suffered mental pain and anguish. (Id. at ¶ 53.)

Negligence requires: (1) the existence of a duty on defendant's part to protect the plaintiff from injury, (2) the failure of the defendant to properly exercise or perform that duty, and (3) an injury to the plaintiff directly caused by the defendant's failure. Grover v. Superior Welding, Inc., 1995 OK 14, ¶ 5, 893 P.2d 500, 502. Whether a duty to protect the plaintiff from the alleged harm exists is a threshold question in a negligence claim. Id.

On this record, Plaintiff's negligence claim fails. Plaintiff has not identified the source of or otherwise defined the duty Defendant allegedly owed, apart from the statutory provision discussed below. In addition, summary judgment is warranted because there is no evidence that Plaintiff suffered the injuries alleged or that they were the direct result of

Defendant's actions. The billing records did not disclose, on their face, Plaintiff's status as HIV+, and there is no evidence controverting statements by several of Defendant's employees that they did not learn this fact until the present lawsuit was filed. Therefore, Defendant is entitled to summary judgment on Plaintiff's negligence claim.

5.      Violation of 63 Okla. Stat. § 1-502.2 (A)

Plaintiff claims that Defendant breached its statutory duty to keep information reflecting Plaintiff's HIV+ status confidential. Oklahoma law provides that all information and records which identify a person who has or may have any communicable or venereal disease, which is required to be reported and which are held or maintained by an organization, is confidential. 63 Okla. Stat. § 1-502.2(A). Because the billing records did not identify Plaintiff as HIV+ or as possibly infected with HIV, Defendant's treatment of those records was not violative of § 1-502.2(A). Accordingly, Defendant is entitled to summary judgment on that claim as well.

6.      FMLA

Plaintiff fails to respond to Defendant's argument that he is not an "eligible employee" and that Defendant's Oklahoma City office did not employ at least 50 employees. Based on this apparent concession that he cannot meet these statutory prerequisites to an FMLA claim, the Court agrees that Defendant is entitled to summary judgment.

7.      Retaliatory Discharge

Both Plaintiff and Defendant move for summary judgment on the retaliatory discharge claim. Oklahoma law prohibits an employer from discharging an employee because the employee has in good faith filed a workers' compensation claim or has retained a lawyer to represent him regarding that claim. 85 Okla. Stat. § 5(A). For a prima facie case of retaliatory discharge:

> The discharged employee must show employment, on the job injury, receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted, or caused to be instituted, proceedings under the Act, and *consequent* termination of employment.

Buckner v. Gen. Motors Corp., 1988 OK 73, ¶ 9, 760 P.2d 803, 806.

The dispute with respect to the prima facie case is whether Plaintiff has adduced evidence that his termination or Defendant's failure to allow him to return to work following receipt of a full release in September 2004 was the consequence of his having filed a workers' compensation claim and having hired a lawyer. The Court determines that Plaintiff has not. "In order to establish a consequent termination under Oklahoma law, a plaintiff must produce evidence sufficient to support a legal inference that the termination was 'significantly motivated' by retaliation for exercising [his] statutory rights." Blackwell v. Shelter Mut. Ins. Co., 109 F.3d 1550, 1554 (10th Cir. 1997) (citations omitted). That an employee was terminated or not allowed to return to work, after filing a workers' compensation claim, is not, standing alone, sufficient to raise a legal inference that the employer's action was significantly motivated by retaliation. Taylor v. Cache Creek Nursing

Ctrs., 1994 OK CIV APP 160, ¶ 14, 891 P.2d 607, 609.  However, timing and other evidence,

including prior positive evaluations, may be sufficient.  See Wallace v. Halliburton Co., 1993

OK 24, 850 P.2d 1056, 1059.

Plaintiff's evidence of a consequent termination is that (1) he was terminated after

filing his claim (evidenced by the reference to him as a "former employee" ███████████

████ and taking him off the phone list and removing his employee box) and (2) that he was

a satisfactory employee because he had been "hired continuously" over a ███-year period.

The Court does not agree that Plaintiff's on-again, off-again employment suggests that

Defendant was pleased with his work performance.  At most, that evidence supports Van

Nest's assessment that Plaintiff was "close to being an adequate employee" (Pl.'s Mot. Ex.

1, Van Nest Dep., at 16) and that he had been re-hired ████.  Plaintiff's evidence falls short

of what was presented in Wallace, where, in addition to other evidence suggesting retaliation,

Wallace was fired 37 days after filing a claim and he had been rated competent or

commendable in most areas of his work and had recently received a raise and a promotion.

Here, the only evidence of retaliation is the timing and serial re-hires, which themselves are

not equivalent to positive evaluations, promotion, and a raise.  Taken together and viewed

in the light most favorable to Plaintiff, his employment history and the temporal relationship

between his ██████ claim and Defendant's indications ██████ that he would not be

returning to work simply do not raise an inference of retaliation.  Having determined that

Plaintiff's evidence does not support a legal inference that Defendant's post-injury treatment

of him was significantly motivated by his workers' compensation claim, the Court holds that Defendant is entitled to summary judgment on Plaintiff's retaliatory discharge claim.[6]

CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (Dkt. No. 48) is GRANTED.  Plaintiff's Motion for Partial Summary Judgment on Liability (Dkt. No. 30) is DENIED.  Judgment will issue for Defendant on all claims.

IT IS SO ORDERED this 23rd day of August, 2006.

ROBIN J. CAUTHRON
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] Because the Court has concluded that Plaintiff fails to establish a prima facie case of retaliatory discharge, it is unnecessary to consider evidence of pretext or the estoppel arguments raised by Defendant.